**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00016-NYW

BRANDON J. HOLMES,

      Plaintiff,

v.

LIEUTENANT N. RUDD,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on two motions filed by Defendant Lieutenant N. Rudd ("Defendant" or "Lt. Rudd") on June 9, 2020:

    (1)    Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") [#33]; and

    (2)    Motion for Summary Judgment for Failure to Exhaust Administrative Remedies ("Motion for Summary Judgment") [#34].

      The court considers the Motions pursuant to 28 U.S.C. § 636(c) and the Order Referring Case [#32]. The court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, having reviewed the Motions, associated briefing [#37; #38; #41; #42], and the applicable case law, this court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES AS MOOT** Defendant's Motion to Dismiss.

**BACKGROUND**

**I.    Procedural History**

      Plaintiff Brandon J. Holmes ("Plaintiff" or "Mr. Holmes"), an individual currently in the custody of the federal Bureau of Prisons ("BOP") and incarcerated in the United States

Penitentiary Administrative Maximum ("ADX") in Florence, Colorado, initiated this action *pro se*

on January 2, 2020, by filing a Complaint asserting a single claim, pursuant to *Bivens v. Six*

*Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and against Defendant

in his individual capacity, for alleged violations of his Eighth Amendment rights.[1]  *See generally*

[#1].[2]  That same day, Plaintiff also filed a Prisoner's Motion and Affidavit for Leave to Proceed

Pursuant to 28 U.S.C. § 1915 ("Motion to Proceed IFP").  [#2].  Five days later, the Honorable

Gordon P. Gallagher granted Plaintiff's Motion to Proceed IFP [#4, filed January 5, 2020], and

subsequently issued an Order Drawing Case on February 10, 2020 [#8].  This case was reassigned

to the Honorable Raymond P. Moore and drawn to the undersigned. [#8]. Pursuant to the Parties'

unanimous consent to the jurisdiction of a magistrate judge [#31], 28 U.S.C. § 636(c), and the

Order Referring Case dated May 28, 2020 [#32], the undersigned fully presides over this matter.

On June 9, 2020, Defendant filed a Motion to Dismiss for failure to state a claim [#33] and

a Motion for Summary Judgment for failure to exhaust administrative remedies [#34].  Plaintiff

filed his Responses [#37, #38] and Defendant filed his Replies [#41, #42] to both Motions on June

---

[1] Because Plaintiff appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  Consistent with this principle, at times, the court will quote from Mr. Holmes's filings without the use of [sic] or the correction of spelling or syntax.  However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[The court's] role is not to act as [a *pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("The court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.") (internal citation omitted).  Moreover, the court applies the same procedural rules and substantive law to Plaintiff as to a represented party.  *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

[2] *See also infra* Section III, pp. 4–5; [#38 at 2 (confirming nature of the claims asserted in his Complaint)].

22 and July 7, 2020, respectively.  The Motions are thus ripe for determination and I consider them below.

## II.    Factual Background

The following facts are drawn from Plaintiff's Complaint.  On November 4, 2018, Plaintiff was allegedly in full body ambulatory restraints "exercising [his] 1st Amendment right to peacefully protest and sacrifice [him]self to bring awareness to the regional office of the ongoing corruption taking place here at the ADX institution," [#1 at ¶ 1], when Defendant entered Plaintiff's observation cell to conduct a two-hour restraint check and an argument between the Parties ensued [*id.* at ¶¶ 2–5].  What began as a verbal altercation quickly escalated when Defendant "responded by using his closed fisted to inflict bodily harm to [Plaintiff's] person, by punching [Plaintiff] several times upon [his] ribs and stomach area, causing [Plaintiff] serious pain and suffering, which resulted and [Plaintiff] . . . both urinating and defecating upon [him]self." [*Id.* at ¶ 6].

Fearing for his life and unable to defend himself from the assault, Plaintiff yelled for help. [*Id.* at ¶ 7].  Defendant then placed "both his hands around [Plaintiff's] throat," choking Plaintiff until he fell unconscious.  [*Id.* at ¶ 8].  When Plaintiff regained consciousness, he observed Defendant speaking with several correctional officers outside of the observation cell. [*Id.* at ¶ 9]. Thereafter, Defendant reentered the observation cell and directed the correctional officers to transition Mr. Holmes from ambulatory restraints to four point restraints, instructing the officers "to place the hand restraints over [Plaintiff's] head very tight to insure [Plaintiff]" could "feel the pain." [*Id.* at ¶ 10].

On November 5, 2018, Plaintiff received a "falsified incident report" for an attempted assault on staff, written by Defendant and dated November 4, 2020 at 10:55 a.m.  [*Id.* at ¶ 13]. Following a "new investigation" of the incident, on November 29, 2020, Defendant rewrote his

incident report to tell "an entirely different story than his first . . . incident report written on November 4, 2018." [*Id.* at ¶ 14].

At some point thereafter, a Discipline Hearing Officer ("DHO") conducted his own investigation and found "no evidence to support lieutenant Rudd allegations of Attempted Assault, and the incident report was expunged based on the lack of evidence." [*Id.* at ¶ 15].   According to Plaintiff, this was not an isolated incident of prison staff assaulting an inmate and then asserting false accusations that the inmate initiated the physical altercation, but "actually represents" official policy and practice at ADX. [*Id.* at ¶ 16].

### III.   Plaintiff's Claims

At the outset, this court finds it appropriate to first identify the nature of the claims brought by Plaintiff in the instant action.  Based on the foregoing allegations, Plaintiff appears to assert a single claim for relief against Defendant, in his individual capacity, for "excessive use of force, personal injury, false charges in disciplinary proceeding." *See* [*id.* at 2, 4].  However, Plaintiff's requested relief includes (a) monetary damages for pain and suffering; (b) compensatory and punitive damages; (c) costs of suit; and (d) a "permanent injunction ordering the change of policy to include videotaping of 2-hour restraint checks to protect both staff and prisoners from false allegations and Assaults." [*Id.* at 6].

In challenging the Complaint on multiple grounds in the instant Motion to Dismiss, Defendant states that the Complaint "does not specify a legal basis for [Plaintiff's] claims," and argues for dismissal of claims Plaintiff "appears to" or "may be" asserting.  [#33 at 1 & n.1].  In Response, Plaintiff summarizes his claims as follows: his "primary" claim

> is an Eighth Amendment violation prohibiting cruel and unusual punishment, relating to defendant Rudd excessive use of force, by chaining the Plaintiff in four-point restraints tightly to a bed for close to 36 hours leaving the Plaintiff in extreme

4

pain, using the four-point restraints as a weapon to inflict pain upon the Plaintiff, for no real reason but to cause pain, as the Plaintiff posed no threat to the defendant.

The Plaintiff secondary claim is an 8th Amendment violation prohibiting cruel and unusual punishment, seeking from this court an order entering a permanent injunction requiring that two-hour restraint checks to be video-taped as prayer for relief.

All other statements in the Plaintiff Complaint, including the falsified incident report, verbal abuse, punching and choking of the Plaintiff until Plaintiff fell unconscious are all elements of the Complaint to reveal the defendant malicious and sadistic intentions to cause pain and injury in violation of the 8th Amendment.

[#38 at 2]. In affording Plaintiff a liberal construction of his pleading, this court construes the Complaint as asserting two claims: an Eighth Amendment claim premised on Lt. Rudd's alleged use of excessive force ("Claim One"), and an alleged Eighth Amendment violation of the cruel and unusual punishment clause based on purported false charges against him, including but not limited to a request for permanent injunctive relief requiring video-taping of two-hour restraint checks ("Claim Two").

Defendant seeks dismissal of all claims pursuant to Federal Rule of Civil Procedure 12(b)(6), *see* [#33], and seeks summary judgment on his failure to exhaust affirmative defense as to Claim One and Claim Two, except as to any official capacity claim associated with Plaintiff's request for injunctive relief requiring video-taping two hour restraint checks, *see* [#34].[3] Because summary judgment in Defendant's favor would bar the vast majority of Plaintiff's claims—and thereby preclude this court's consideration of their merits—I consider the instant Motion for Summary Judgment first.

---

[3] Lt. Rudd concedes that summary judgment on his failure to exhaust affirmative defense is unwarranted as to "any official capacity claim for injunctive relief requiring videotaping restraint checks," and "clarifies that he is not pursuing an argument that such claim is unexhausted, given that BOP chose to process an untimely administrative remedy about that issue." [#42 at 3 n.1].

## MOTION FOR SUMMARY JUDGMENT

**I.      Legal Standard**

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy his burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is

admissible at trial—only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

In applying these legal principles, this court is mindful that Mr. Holmes proceeds pro se and is entitled to a liberal construction of his papers. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the court cannot and does not act as an advocate for a pro se party. *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019). Nor does a party's pro se status exempt him from complying with the procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## II.   Undisputed Material Facts

The court draws the following undisputed material facts from the record before it.[4]

1.      Plaintiff is a BOP inmate who is currently incarcerated at the ADX facility in Florence, Colorado. [#34 at ¶ 1; #34-1 at ¶ 8].

2.      Mr. Holmes alleges, *inter alia*, that: (a) in the course of a two-hour restraint check on November 4, 2018, Defendant "us[ed] his closed fist . . . punching me several times upon my ribs and stomach area," [#1 at ¶ 6]; (b) Defendant placed "both of his hands around my throat choking me until I fell unconscious," [*id.* at ¶¶ 7–8]; (c) Defendant directed other corrections

---

[4] Because Mr. Holmes failed to file a response to the Statement of Facts in Defendant's Motion for Summary Judgment, the court deems the properly supported facts offered by Defendant as true. *See* Fed. R. Civ. P. 56(e)(2).

officers to place Mr. Holmes in four-point restraints, where he was left for "at least 36 hours," [*id.* at 9–11]; and (d) Mr. Holmes received a "falsified incident report," alleging attempted assault on staff," written by Lt. Rudd and dated November 4, 2018 [*id.* at ¶ 13].  [#34 at ¶ 2; #34-1].[5]

3.      The purportedly falsified incident report was delivered to Mr. Holmes on November 5, 2018.  [#1 at 10 ¶ 13; #1-1].

4.      Mr. Holmes seeks compensatory and punitive damages, costs of suit, and a permanent injunction "ordering the change of policy to include videotaping of 2-hour restraint checks." [#1 at 12; #34 at ¶ 3].

5.      Citing to Administrative Remedy 963150-A1, Mr. Holmes states in his Complaint that he has exhausted administrative remedies with respect to the allegations in this case. [#1 at 5; #34 at ¶ 4].

6.      Pursuant to 28 C.F.R. § 542.14, an inmate must complete informal resolution and submit to the Warden a formal written Administrative Remedy Request (or "BP–9" request) within 20 calendar days of the date on which the basis for the Administrative Remedy Request occurred. [#34 at ¶ 5; #34-1 at ¶ 16].

7.      Because the bases for Mr. Holmes's Administrative Remedy Request occurred on November 4 and 5, 2018, respectively, he was required to complete informal resolution and submit to the warden a BP–9 form on or before November 24, 2018 for his claim for excessive force [#34 at ¶ 5; #34-1 at ¶ 16] and November 25, 2018 for his claim for false reporting. [#1-1].

---

[5] This court considers Mr. Holmes's Complaint as an affidavit pursuant to Rule 56(c)(4) of the Federal Rules of Civil Procedure because it is verified, appears to be made on personal knowledge, sets out facts that would be admissible in evidence, and demonstrates Mr. Holmes's competency to testify on the matters asserted.  *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010).  The court, therefore, considers Mr. Holmes's allegations in the Complaint as competent summary judgment evidence to the extent they are not contradicted by other evidence in the record.

8.      On November 7, 2018, Mr. Holmes submitted an Informal Resolution Form ("November 7 BP–8") to his correctional counselor, Brenda Torres ("Ms. Torres"). [#37 at 12 ¶ 9]. The BOP does not maintain records of all Informal Resolution Forms [#42 at 5 n.3; #34-1 at ¶ 9], and Mr. Holmes did not provide the court with a copy of his November 7 BP–8 or a detailed summary of the information contained therein.

9.      Mr. Holmes did not submit a BP–9 regarding the alleged November 4 assault by Lt. Rudd on or before November 24, 2018. [#34 at ¶ 5; #34-1 at ¶ 5].

10.     On December 6, 2018, Mr. Holmes submitted an Informal Resolution Form ("December 6 BP–8") requesting that a "new program statement be made making it mandatory that each two hour ambulatory restraint check be conducted . . . using the hand held video cameras that the officers use during every use of force incident." [#34 at ¶ 6; #34-1 at ¶ 16; #34-1 at 28].

11.     The December 6 BP–8 submitted by Mr. Holmes alleges that "[o]n numerous occasions there has been allegations made by both officers and prisoners of physical assaults committed by one party or the other." [#34 at ¶ 6; #34-1 at 28].

12.     The December 6 BP–8 does not mention Lt. Rudd, the November 4, 2018 incident alleged in the Complaint, any specific use of force against Mr. Holmes, or any specific false reporting by Lt. Rudd or otherwise. [#34 at ¶ 6; #34-1 at 28].

13.     On December 14, 2018, Mr. Holmes submitted a BP-9 ("December 14 BP–9"), Remedy ID No. 963150-F1, seeking a prison policy change requiring that two-hour restraint checks be monitored by using hand-held video cameras. [#34 at ¶ 7; #34-1 at ¶ 12; #34-1 at 29].

14.     The December 14 BP–9 alleges that "[o]n numerous occasions there has been allegations made by both officers and prisoners of physical assaults committed by one party or the

other," and that "I myself have been a victim of false claims of this sort on numerous occasions." [#34 at ¶ 7; #34-1 at 29].

15.     The December 14 BP–9 does not mention Lt. Rudd, the November 4, 2018 incident alleged in the Complaint, any specific use of force against Mr. Holmes, or any specific false reporting by Lt. Rudd or otherwise. [#34 at ¶ 7; #34-1 at 29].

16.     On January 12, 2019, the Warden denied Mr. Holmes's December 14 BP–9, citing to BOP Program Statement 5566.06 and indicating that two-hour restraint checks are not use-of-force incidents for which video recording is required. [#34 at ¶ 8; #34-1 at ¶ 12; #34-1 at 30].

17.     Four days later, Mr. Holmes submitted a Regional Administrative Remedy Appeal ("January 16 BP–10"), Remedy ID No. 963150-R1. [#34 at ¶ 9; #34-1 at ¶ 13; #34-1 at 31].

18.     The January 16 BP–10 alleges that "[o]n numerous occasions there has been allegations made by both officers and prisoners of physical assaults committed by one party or the other," and that "I myself have been a victim of false claims of this sort on numerous occasions." [#34 at ¶ 9; #34-1 at ¶ 13; #34-1 at 31].

19.     The January 16 BP–10 does not mention Lt. Rudd, the November 4, 2018 incident alleged in the Complaint, any specific use of force against Mr. Holmes, or any specific false reporting by Lt. Rudd or otherwise. [#34 at ¶ 9; #34-1 at ¶ 13; #34-1 at 31].

20.     On March 1, 2019, the Regional Director denied Mr. Holmes's January 16 BP–10, citing the same policy statement included in the Warden's January 12 response to Mr. Holmes. [#34 at ¶ 1; #34-1 at ¶ 13; #34-1 at 32].

21.     On March 24, 2019, Mr. Holmes submitted a Central Office Administrative Remedy Appeal ("March 24 BP–11"), Remedy ID No. 963150-A1. [#34 at ¶ 11; #34-1 at ¶ 14; #34-1 at 33].

22.     In the March 24 BP–11, Mr. Holmes specifically refers to Lt. Rudd, alleging that Defendant was "the latest employee to accuse [him] of a false alleged attempted assault" and placed Mr. Holmes in four-point restraints on November 4, 2018 that caused unspecified injuries. [#34 at ¶ 11; #34-1 at ¶ 14; #34-1 at 33].

23.     The March 24 BP–11 did not mention any incidents of punching or choking or suggest that Mr. Holmes was placed in four-point restraints for longer than necessary. [#34 at ¶ 11; #34-1 at ¶ 14; #34-1 at 33].

24.     On April 17, 2019, the Administrator for National Inmate Appeals denied the Mr. Holmes's March 24 BP–11, indicating that the office found "no reason to change policy requiring videotaping of two hour restraint checks at this time." [#34 at ¶ 12; #34-1 at ¶ 14; #34-1 at 34].

## III.   Analysis

Defendant moves for summary judgment on his failure to exhaust affirmative defense, arguing that Mr. Holmes failed to exhaust his administrative remedies prior to bringing this suit. [#34, #42 at 3 n.1].  I turn first to the statutes and regulations applicable to Mr. Holmes's claims, including the Prison Litigation Reform Act ("PLRA") and the BOP's Administrative Remedy Program, before considering whether the Parties have met their respective burdens for purposes of summary judgment on Defendant's affirmative defense of failure to exhaust.

### A.     Statutory Framework for Exhaustion of Administrative Remedies

#### 1.     Prison Litigation Reform Act

The PLRA commands: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Any prisoner who seeks to bring a claim involving 'general circumstances or

11

particular episodes' of prison life must first exhaust the administrative remedies available to him in prison." *May v. Segovia*, 929 F.3d 1223, 1226–27 (10th Cir. 2019) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Jones v. Bock*, 549 U.S. 199, 211 (2007)). "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (internal citations omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim [or any other federal claim] under [the] PLRA for failure to exhaust his administrative remedies," and the "doctrine of substantial compliance does not apply." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks omitted).

But the PLRA makes explicit that a prisoner must exhaust only <u>available</u> administrative remedies. 42 U.S.C. § 1997e(a). An available remedy is one "capable of use for the accomplishment of a purpose." *See Booth v. Churner*, 532 U.S. 731, 737 (2001). For purposes of PLRA exhaustion, an administrative remedy is <u>unavailable</u> "when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation," *Tuckel v. Grover*, 660 F.3d 1249, 1252-53 (10th Cir. 2011), or "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy," *Little*, 607 F.3d at 1250. Indeed, "courts [] are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). Once Defendant demonstrates that Mr. Holmes did not exhaust his administrative remedies, the onus is on Mr. Holmes "to show that remedies were unavailable to him." *May*, 929 F.3d at 1234 (internal quotation marks omitted).

     2.    <u>The BOP Administrative Remedy Program</u>

The BOP provides a four-tiered Administrative Remedy Program for inmate grievances, which is codified at 28 C.F.R. § 542.10, *et seq.* The first tier requires informal resolution with prison staff, which the prisoner requests with a form commonly known as a BP–8. *See* 28 C.F.R. § 542.13(a). A prisoner must obtain this form from his correctional counselor. *Id.* The regulations allow the prisoner twenty days from the date of the incident to complete the informal resolution and file a formal Request for Administrative Remedy, if necessary. *See* 28 C.F.R. § 542.14. The prisoner must submit the formal inquiry, known as a BP–9 request, to the warden at the institution where the prisoner is incarcerated. *Id.* If dissatisfied with the warden's response, the prisoner may appeal to the Regional Director by filing a Regional Office Administrative Remedy Appeal, also known as a BP–10 request, within twenty days of the warden's dated response. *See* 28 C.F.R. § 542.15(a). Finally, the prisoner may file a Central Office Administrative Remedy Appeal, known as a BP–11 request, with the BOP's Office of General Counsel within thirty days of the Regional Office's denial. *Id.* At any level, an official's failure to respond within the time allotted constitutes a denial of the request or appeal. 28 C.F.R. § 542.18.

The BOP regularly maintains records of administrative complaints filed by inmates under the Bureau Administrative Remedy Program in a database known as SENTRY. *See* [#34–1 at ¶¶ 2, 6–7]. Defendant supplied, through the Declaration of Paula Trujillo, a BOP employee working as a Paralegal at the ADX facility in Florence, Colorado, a summarized account of every grievance Plaintiff filed since his placement in BOP custody on May 8, 2009, through March 24, 2020. *See* [*id.* at ¶¶ 8, 10–11; *id.* at 14–26].

### B.    Application

Failure to exhaust administrative remedies is an affirmative defense.  As set forth above, Defendant bears the initial burden of establishing his prima facie case of Mr. Holmes's failure to

exhaust.  If Defendant satisfies this requirement, the burden shifts to Mr. Holmes to excuse his failure to comply with the procedures set forth in 28 C.F.R. § 542.10 *et seq.*  I first consider whether the undisputed facts demonstrate that Mr. Holmes failed to exhaust his administrative remedies on either Claim One or Claim Two, except to the extent that Claim Two asserts an official capacity claim seeking injunctive relief.  I then turn to whether—notwithstanding my conclusion that Mr. Holmes failed to exhaust the remedies set forth in the BOP's Administrative Remedy Program— Mr. Holmes has nevertheless demonstrated that his failure is excused because administrative remedies were rendered unavailable to him.

    1. <u>Mr. Holmes failed to exhaust his administrative remedies.</u>

  Defendant seeks summary judgment on his failure to exhaust affirmative defense under two theories.  First, Defendant avers that Mr. Holmes failed to timely initiate the first of the requisite formal requests within the applicable 20-day window. [#34 at 5–7].  Second, Defendant argues that Mr. Holmes failed to include in his grievances the same facts underlying the instant action. [*Id.* at 7–9].  According to Defendant, each of these foregoing failures independently precludes Mr. Holmes from pursuing his claims based on excessive force and/or false reporting against Defendant, and nothing excuses Mr. Holmes's failure to exhaust his administrative remedies.  *See generally* [*id.*].  I respectfully agree and consider each issue in turn.

  ***Failure to Timely File Grievance.***  The undisputed material facts reveal that Mr. Holmes, as a BOP inmate, is subject to the BOP's grievance procedures specified in 28 C.F.R. § 542.14(a), of which Mr. Holmes was aware, and that he did not exhaust his administrative remedies.  Mr. Holmes's complaints of Defendant's excessive use of force on November 4, 2018 are subject to the grievance procedures in 28 C.F.R. § 542.14(a).  *See supra* [Undisputed Material Facts ("UMF") ¶¶ 1–8]. *See also* [#1 at 5, 9–10 ¶¶ 6–11, 13; *id.* at 12; #1-1; #34-1 at 4–7 ¶¶ 5, 8, 9, 16; #37 at 12

¶ 9; #42 at 5 n.3].  Similarly, Mr. Holmes's allegations that he was subject to a false incident report arose no later than November 5, 2018, when the purportedly false incident report was delivered to him.[6]  [#1-1].  Pursuant to § 542.14(a), Mr. Holmes was required to attempt informal resolution with prison staff and submit a formal BP–9 with the Warden within twenty days of the date on which the basis for the request occurred—or in this case, by November 24 or 25, 2018 for his Eighth Amendment claims for excessive force and false reporting, respectively.  [UMF ¶¶ 6–7; #1-1; #34-1 at ¶ 16].

Mr. Holmes filed a BP–8 on November 7, 2018, although the precise contents of that form are unknown.  [#34-1; #37 at 12 ¶ 9; #42 at 5 n.3].  Mr. Holmes filed another BP–8 on December 6, 2018, [#34-1 at 6–7 ¶ 16; *id.* at 28], but failed to file a BP–9 until December 14, 2018, *see* [*id.* at 5–6 ¶ 12; *id.* at 29]—outside the twenty-day window for either Claim One or Claim Two. Moreover, to the extent Mr. Holmes avers that he did timely file an appropriate[7] grievance regarding the November 4 incident when he submitted the November 7 BP–8 to Ms. Torres, this evidence is insufficient to establish exhaustion.  Even if true, this fact does not absolve Mr. Holmes of the additional requirements set forth in § 542.14(a)—including the requirement to submit a formal BP–9 to the Warden upon failure to resolve the issue informally—which Mr. Holmes indisputably did not satisfy.  [UMF ¶ 9; #34-1 at 4 ¶ 5].  Indeed, Mr. Holmes does not aver that he

---

[6] While Defendant contends that the twenty-day time period for initiating the administrative procedure for the alleged falsified incident report began running on November 4, 2018 – the date of the incident – nothing in the record suggests that Mr. Holmes had notice that the incident report would reflect falsehoods on November 4.  Rather, Mr. Holmes alleges in his Verified Complaint that he received the incident report on the following day, November 5, 2018 [#1 at 10 ¶ 13], which is corroborated by the date reflected in the report itself.  [#1-1].  Accordingly, this court finds that Mr. Holmes's claim for violation of his Eighth Amendment rights arising from the alleged falsified incident report did not accrue until November 5.  *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").  Ultimately, the difference in the single day does not materially affect this court's analysis.

[7] *See infra* note 8.

submitted a BP–9 related to his November 7 BP–8, timely or otherwise.  But even assuming that Mr. Holmes timely filed a BP–9, as discussed in more detail below, there is no genuine issue of material fact that Mr. Holmes exhausted the claims specific to this instant action.

  ***Inconsistent Facts Alleged.***  Defendant argues that summary judgment for failure to exhaust administrative remedies is supported by an additional, independent basis because the Administrative Remedy Request filed by Plaintiff did not "allege the same facts as the court complaint," [#34 at 7 (quoting *Williams v. Wilkinson*, 659 F. App'x 512, 514 (10th Cir. 2016) (unpublished))].  This court respectfully agrees.  The undisputed facts show that Mr. Holmes's December 6 BP–8, December 14 BP–9, and January 16 BP–10 make no mention of November 4, 2018, Lt. Rudd, the use of excessive force, or any other specific allegations of force against Mr. Holmes. [#34-1 at 5 ¶ 13; *id.* at 28–29, 31].  Indeed, it is undisputed that Mr. Holmes mentioned Lt. Rudd's alleged November 4, 2018 use of excessive force in a formal request for the first time in his March 24 BP–11, at the final stage of the BOP's administrative remedy process.[8] [*Id.* at 5 ¶ 14; *id.* at 33].  Even so, Mr. Holmes alleged only that Lt. Rudd placed Mr. Holmes in four-point restraints that caused unspecified injuries—making no mention of Lt. Rudd punching or choking Mr. Holmes, or any suggestion that Mr. Holmes was placed in the four-point restraints for longer than necessary. [*Id.* at 5 ¶ 14; *id.* at 33].  By omitting these details from his grievances, Mr. Holmes failed to "provide[] enough information regarding the nature of the alleged wrong to enable prison officials to investigate and address [his] complaint," *Williams*, 659 F. App'x at 520, and thus failed to exhaust his administrative remedies related to the November 4 incident.  *See, e.g.*, *Sayed v. Lt.*

---

[8] Notwithstanding Mr. Holmes's averment that he submitted a BP–8 on November 7, 2018 "laying out the facts, as mentioned within [his] verified complaint filed with this court," [#37 at 12 ¶ 9], he neither provides a copy of the BP–8 nor a summary of its contents from which this court could conclude that the November 7 BP–8 included the same facts as the Complaint.

*Page Virginia*, No. 16-cv-02712-WJM-NRN, 2020 WL 1130069, at *5 (D. Colo. Mar. 9, 2020) (finding failure to exhaust administrative procedures where inmate sought remedies in his lawsuit that he had not sought in his grievances); *Saleh v. Wiley*, No. 09-cv-02563-PAB-KLM, 2012 WL 435622, at *10 (D. Colo. June 19, 2012) (finding failure to exhaust administrative remedies where inmate's grievance did not "mention the altercation" that was the basis of the lawsuit or "provide sufficient information to trigger an investigation of [the defendant's] conduct").

Similarly, Mr. Holmes's December 6 BP–8, December 14 BP–9, and January 16 BP–10 do not allege that Lt. Rudd included false allegations of misconduct on the part of Mr. Holmes arising from the November 4 incident.  While the December 6 BP–8 states that "[o]n numerous occasions there has been allegations made by both officers and prisoners of physical assaults committed by one Party or another," [#34-1 at 10], this general statement does not even go as far as asserting such allegations are false or that he specifically was subject to such allegations. Similarly, though Mr. Holmes's December 14 BP–8 alleges that he has been a victim of false reporting, he makes no mention of the November 4 incident.  [*Id.* at 29].  Plaintiff's January 16 BP–10 again states that he has been a victim of false reporting, but does not refer to the November 4 incident or the resulting incident report delivered on November 5.  [*Id.* at 31].  These general averments are insufficient to exhaust his claim that Lt. Rudd falsified the incident report, as they do not give prison officials a fair opportunity to investigate and resolve his allegations.  *See Buhl v. Fox*, No. 17-CV-0697-MSK-KMT, 2018 WL 3439368, at *4 (D. Colo. July 16, 2018), *appeal dismissed*, No. 18-1305, 2018 WL 7140570 (10th Cir. Oct. 29, 2018).

In sum, the undisputed evidence submitted by Defendant shows that Mr. Holmes failed to exhaust his administrative remedies because he failed to timely file grievances related to the November 4, 2018 incident or November 5, 2018 incident report, and—even if timely—the

grievances Mr. Holmes did file failed to allege the same facts upon which his Complaint relies. Because Defendant thus carried his burden of making a prima facie showing that Mr. Holmes failed to comply with the BOP's Administrative Remedy Program, the burden is on Mr. Holmes to provide admissible evidence that ADX officials prevented, thwarted, or hindered his ability to comply with the regulation by denying him any way to submit his grievance forms. *See Anderson*, 277 U.S. at 248 (explaining that the burden shifts to the nonmovant after the summary judgment movant makes a prima facie showing); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (stating that the nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence). I turn now to consider whether Mr. Holmes has met his burden.

2.  Mr. Holmes has failed to adduce sufficient facts to excuse his lack of exhaustion.

In Response to the Motion for Summary Judgment, Mr. Holmes counters that he has exhausted all opportunities for administrative remedies available to him, and that any failure to exhaust was caused by ADX staff misconduct. [#37 at 5].  Specifically, Mr. Holmes avers that he was unable to include "a large portion of the events alleged in his complaint inside his grievances" because ADX "staff prevented him from doing so." [*Id.* at 7].

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has interpreted 42 U.S.C. § 1997e(a) to mean that if an administrative remedy is *not* available, an inmate cannot be required to exhaust it. *Tuckel v. Grover*, 660 F.3d 1249, 1252-53 (10th Cir. 2011) (holding that an administrative remedy is unavailable when prison officials prohibit inmates from filing grievances through threats or intimidation of serious bodily harm).  For purposes of the PLRA, an administrative remedy is available if it affords an inmate "the possibility of some relief for the action complained of," *Booth*, 532, U.S. at 738, and unavailable if "prison officials prevent, thwart,

or hinder a prisoner's efforts to avail himself of [the] administrative remedy," *Little*, 607 F.3d at 1250.

In *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), the United States Supreme Court outlined three situations in which failure to exhaust is excusable because an administrative remedy is not available to the inmate as required by the PLRA. Relevant here, a remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1865. Exhaustion is not required when "officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures . . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.* at 1860. Nevertheless, an inmate faces a "high bar to show unavailability." *Williams v. Borrego*, No. 19-cv-00371-RBJ-MEH, 2020 WL 1502296, at *7 (D. Colo. Mar. 30, 2020).

In the Tenth Circuit, an inmate must make two showings in order to meet his "heightened burden" to show unavailability of administrative remedies. *See id.* (citing *May*, 929 F.3d at 1235; *Tuckel*, 660 F.3d at 1254). As the nonmoving party, Mr. Holmes "must produce specific facts that show there is a genuine issue of fact as to whether (1) 'the threat, machination, or intimidation actually did deter him from lodging a grievance' and (2) 'the threat, machination, or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance.'" *May*, 929 F.3d at 1235 (quoting *Tuckel*, 660 F.3d at 1254) (internal brackets and alternations omitted).[9] The first element is subjective, while the second, objective element "ensures that

---

[9] The court notes that neither Party explicitly argues under the *Tuckel* framework. Nevertheless, Defendant relies on cases that applied the two-part *Tuckel* test to award summary judgment on failure to exhaust affirmative defenses in a defendant's favor, *see, e.g.*, [#42 at 2 (citing *May v. Segovia*, 929 F.3d 1223 (10th Cir. 2019))], and Mr. Holmes counters that ADX staff thwarted his attempts to exhaust, *see* [#37 at 6 ("Administration staff prevented Plaintiff from properly

inmates cannot easily circumvent the exhaustion requirement, and provides district courts with a means of quickly filtering frivolous claims. Only [conduct] sufficiently serious and . . . severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes." *Tuckel*, 660 F.3d at 1254.  Because Mr. Holmes must demonstrate both elements to satisfy his heightened burden, my analysis here begins and ends with the subjective element of the inquiry.[10]

To the extent Mr. Holmes argues that he was unable to properly exhaust his administrative remedies due to interference by ADX staff, this court finds that Mr. Holmes has failed to meet his burden.  Mr. Holmes avers that he submitted a BP–8 to his correctional counselor, Ms. Torres, on November 7, 2018, but was told that any grievances regarding Lt. Rudd and the November 4, 2018 incident would not leave the ADX facility. [#37 at 12–13 ¶¶ 9–11].  But even if true, his November 7 BP–8 and a verbal declaration that subsequent grievances would not be sent outside the ADX facility would not excuse Mr. Holmes from the requirements of 28 C.F.R. § 542.14.  *See Koehn v. Denham*, No. 17-cv-00234-RM-KMT, 2018 WL 10247014, at *3 (D. Colo. Jan. 29, 2018) ("If the informal complaint does not resolve the dispute, the inmate may make an 'Administrative Remedy Request' to the prison Warden using a BP–9 form."); 28 C.F.R. § 542.18 ("If the inmate does not

---

exhausting his Administrative remedies."); *id.* at 16 ¶ 22 ("I was prevented from properly exhausting my Administrative Remedies by the Administration staff at this prison."), *id.* at 17 ¶ 23 ("My Administrative Remedies were interfered with during every stage of the process.")].  And despite Plaintiff's reliance on cases outside of the Tenth Circuit, *see, e.g.*, [#37 at 5–6 (citing *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004); *Dole v. Chandler*, 438 F.3d 804, 809, 812 (7th Cir. 2006); *Crawford v. Berkebile*, 2008 WL 323155, at *7–8 (N.D. Tex. Feb. 6, 2008))], this court affords his filing a liberal construction and considers his arguments in light of applicable precedent.

[10] However, the court notes that Mr. Holmes also fails to provide any evidence that suggests that a reasonable inmate in the same or similar circumstances would be deterred from pursuing an appeal. *See Walker v. Mazotti*, No. 16-cv-02221-RBJ-MEH, 2018 WL 4385288, at *4 (D. Colo. Sept. 14, 2018) (applying the *Tuckel* test and finding that the plaintiff inmate failed to demonstrate either element).

receive a response within the time allotted for reply, . . . the inmate may consider the absence of a response to be a denial at that level.").  To the extent Mr. Holmes argues implicitly that his failure to exhaust is excused for lack of a timely response to his November 7 BP–8, thereby obviating his need to satisfy subsequent levels of the Administrative Remedy Program, *see* [#37 at 5], his position has been expressly rejected by courts within this District.  *See, e.g.*, *Denham*, 2018 WL 10247014, at *3 ("Thus, a failure by BOP officials to process administrative remedy requests or appeals would not prevent an inmate from exhausting administrative remedies because an inmate may proceed to the next step in the administrative remedy procedure if he does not receive a response within the time allowed." (internal quotation marks omitted)).

Indeed, there is no evidence to suggest that Mr. Holmes even attempted to submit a formal BP–9 request to the Warden regarding the November 4 incident—let alone that such an attempt was thwarted.[11]  *Cf.* [#37 at 14 ¶ 14 ("I asked every staff member I encountered . . . to help me get a grievance out to the Regional director, central office or to the internal Affairs . . . .")].  And Mr. Holmes offers no explanation as to why he failed to submit a BP–9 to the Warden at ADX—notwithstanding the fact that such a filing would necessarily circulate <u>within</u> the ADX facility.

---

[11] While this court recognizes, and in no way discounts, the potential asymmetry of information between the Parties and the potential challenges Mr. Holmes faces in eliciting evidence to support his assertions, bald allegations cannot preclude summary judgment and this court cannot excuse Mr. Holmes from the requirements of Rule 56. *See May v. Segovia*, No. 15-cv-00405-NYW, 2017 WL 5495798, at *7 (D. Colo. Nov. 16, 2017) (same), *aff'd* 929 F.3d 1223 (10th Cir. 2019); *Fields v. Oklahoma State Pen.*, 511 F.3d 1109, 1112 (10th Cir. 2007) ("[The plaintiff] claims only that he was hampered in exhausting his remedies and proving that he had exhausted, because he was denied access to and storage space for his legal materials. Bald allegations cannot preclude summary judgment."); *accord Wilson v. Bezona*, No. 10-CV-00756, REB-KLM, 2011 WL 7425472, at *6 (D. Colo. May 23, 2011) ("The conclusory assertions in Plaintiff's Response that he was not afforded any method of making copies is not competent summary judgment evidence. . . . The [Tenth Circuit] has clearly explained that an inmate plaintiff must put forth some evidence that prison officials interfered with his ability to properly exhaust his administrative remedies if he seeks to have his failure to exhaust excused.").

*Compare* [*id.* at 13 ¶ 11 ("[Ms. Torres] further informed me that . . . no informal resolution form or other written complaint concerning my accusations against Lt. Rudd would be allowed <u>to leave this prison</u>.") (emphasis added)] *with* 28 C.F.R. § 542.14 (BP–9 requests are submitted to the warden <u>at the facility</u> where an inmate is incarcerated).

Moreover, while Mr. Holmes states that he was told that his grievances would not be processed if they included any "any details about the assault . . . throughout *any* of [Plaintiff's] administrative remedy process," he offers no explanation for his successful inclusion of details regarding his placement in four-point restraints in his appeal to the Central Office. *Compare* [#37 at 16 ¶ 21] *with* [*id.* at 5–7]. Mr. Holmes was ultimately able to include these details in his March 24 BP–11, which refers to Lt. Rudd and November 4, 2018 as an example of the last time Mr. Holmes was falsely accused of attempted assault and placed in four-point restraints. [#34-1 at 34]. Thus, even if Mr. Holmes was told that his grievances regarding Lt. Rudd would not be processed, he offers no evidence that his ability to submit such grievances was actually prevented or obstructed—indeed, he successfully submitted a BP–11 grievance naming Lt. Rudd and referring to events on November 4, 2018 at the final stage of the remedial process. *See* [*id.*].

Mr. Holmes simply offers no factual allegations as to how he was prevented from submitting the requisite BP–9 and BP–10 grievances, yet was able to include details of the alleged assault at the final stage of the administrative process. *See May*, 929 F.3d at 1235. Mr. Holmes thus fails to support his allegations of interference with facts sufficient to demonstrate that administrative remedies were unavailable to him. *See id.* (holding that the plaintiff failed to offer any factual support for his allegation that prison officials prohibited him from filing grievances "beyond the allegation itself," which was insufficient to demonstrate his administrative remedies were unavailable). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly

supported motion for summary judgment." *Fazio v. City & Cty. of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). *See also Martinez v. CDOC*, No. 19-cv-01245-PAB-NYW, 2020 WL 6119879, at *11–12 (D. Colo. June 4, 2020) (granting summary judgment where plaintiff failed to exhaust administrative remedies prior to bringing suit and failed to carry burden of demonstrating that those remedies were unavailable to him), *report and recommendation adopted*, 2020 WL 5525363 (D. Colo. Sept. 14, 2020).

As such, Mr. Holmes fails to meet his burden to establish that he was subjectively deterred from pursuing appeal of his November 7 BP–8 or including details of the alleged assault in his grievances, nor has he come forward with any evidence from which it could be reasonably inferred that a reasonable inmate in Mr. Holmes's circumstances would have been discouraged from pursuing a grievance through the BOP's administrative channels. Therefore, I conclude that there is no genuine dispute of fact as to the availability of Mr. Holmes's administrative remedies, and conclude, based on the undisputed material facts and evidence submitted in support of the instant Motion for Summary Judgment, that Mr. Holmes failed to exhaust his administrative remedies. Thus, Claim One and Claim Two, as asserted against Lt. Rudd in his individual capacity, are both barred. *See Williams v. Franklin*, 302 F. App'x 830, 831 (10th Cir. 2008); *Collins v. Fed. Bureau Of Prisons*, 69 F. App'x 411, 413 (10th Cir. 2003) ("No matter what kind of relief Plaintiff seeks, he is nevertheless required to exhaust all administrative remedies before proceeding with his instant *Bivens* action. Because his failure to meet the appropriate filing deadlines for administrative remedies constitutes a failure to exhaust those remedies, his *Bivens* claim is barred by the PLRA."). Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** and Claim One and Claim Two, except insofar as it asserts an official capacity claim seeking injunctive relief in the form of video-taping two-hour restraint checks, are **DISMISSED without prejudice.**

## MOTION TO DISMISS

The instant Motion to Dismiss seeks dismissal of both claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Because summary judgment is granted in Defendant's favor as to Claim One and Claim Two asserted against Lt. Rudd in his individual capacity, any arguments with respect to such claims in Defendant's Motion to Dismiss are moot. Defendant does not argue that an official capacity Eighth Amendment claim based on false reporting against Lt. Rudd, seeking injunctive relief in the form of video-taping two-hour restraint checks, is unexhausted.  [#42 at 3 n.1].

## I.     Legal Standard

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *See also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even *pro se* litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible").

The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Should the court receive and consider materials outside the complaint, the court may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). However, a district court may consider legal arguments contained in a brief in opposition to dismissal or documents referred to in the complaint that are central to a plaintiff's claim, without converting the Rule 12(b)(6) motion into a summary judgment motion, if the Parties' do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

## II.      Allegations in the Complaint

The allegations set forth in the Complaint are discussed above. *See supra* pp. 3–4. In sum, Plaintiff claims that Lt. Rudd assaulted Plaintiff on November 4, 2018 while conducting a two-hour restraint check and subsequently falsely reported that Plaintiff attempted to assault Lt. Rudd first. *See generally* [#1].

## III.      Analysis

Relevant here, Plaintiff seeks injunctive relief in the form of a permanent injunction requiring the videotaping of two-hour restraint checks at the ADX facility. [*Id.* at 3, 6, 12; #38 at 1, 9]. But Plaintiff sues Lt. Rudd in his individual capacity only, *see* [#1 at 3, 6, 12], and injunctive relief is not available relief for a claim against a government official in his individual capacity, *see Matthews v. Wiley*, 74 F. Supp. 2d 1159, 1167 (D. Colo. 2010). "Such relief is only available in an official capacity suit," *Matthews*, 74 F. Supp. 2d at 1167, and Plaintiff confirmed in his

Response to the Motion to Dismiss that he is not asserting a claim against Lt. Rudd in his official capacity, *see* [#38 at 9]. *See also Pub. Serv. Co.*, 311 F.3d at 1035 (a district court may consider argument contained in a brief in opposition to dismissal under Rule 12(b)(6) without converting to a summary judgment motion).  Moreover, despite the liberal construction this court affords Plaintiff's filings, this court cannot construct arguments or advance alternative legal theories on his behalf.  *Gallagher*, 587 F.3d at 1067 ("[O]ur role is not to act as [plaintiff's] advocate.").  Given Plaintiff's disavowal of any official capacity claim in this action, there simply is no other claim for this court to dismiss.

Accordingly, this court **DENIES** Defendant's Motion to Dismiss as **MOOT**.

### CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)      The Defendant's Motion for Summary Judgment [#34] is **GRANTED**;

(2)      Summary judgment is **ENTERED** in **FAVOR** of Defendant Lieutenant Rudd and **AGAINST** Mr. Holmes;

(3)      Plaintiff's Eighth Amendment claim based on excessive force asserted against Lieutenant Rudd (Claim One) and Eighth Amendment claim based on false reporting (Claim Two) are **DISMISSED without prejudice**;[12]

(4)      The Defendant's Motion to Dismiss [#33] is **DENIED AS MOOT**;

---

[12] Typically, a conclusion that a plaintiff failed to exhaust his administrative remedies results in a dismissal without prejudice because "[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw." *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212–13 (10th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  Moreover, several courts in this District have held that a prerequisite to dismissal with prejudice is the prison authorities' rejection of a plaintiff's grievances as untimely. *See May*, 2017 WL 5495798, at *8 n.6 (collecting cases).

(5)   The Clerk of the Court shall **ENTER** Final Judgment in **FAVOR** of Lt. Rudd and **AGAINST** Mr. Holmes, with each party to bear his own costs and fees;[13]

(6)   This matter shall be **TERMINATED** accordingly; and

(7)   A copy of this Order, marked as legal mail, shall be sent to:

> Brandon Jaquay Holmes
> #73170-004
> FLORENCE ADMAX
> U.S. PENITENTIARY
> Inmate Mail/Parcels
> PO Box 8500
> Florence, CO 81226

DATED: December 31, 2020                    BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[13] While costs should generally "be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), the district court may in its discretion decline to award costs where a "valid reason" exists for the decision. *See, e.g.*, *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) (citations omitted). Given that Lt. Rudd moved for summary judgment on the affirmative defense of exhaustion and the fact that Plaintiff is indigent, the court declines to award costs. *See Cantrell v. Int'l Bd. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 459 (10th Cir. 1995) (noting that there is no abuse of discretion when the district court denies fees "to a party that was only partially successful."); *Shapiro v. Rynek*, 250 F. Supp. 3d 775, 779 (D. Colo. 2017) ("[A] district court does not abuse its discretion in denying costs when . . . the non-prevailing party is indigent.").